**David DONALDSON, Appellant**

v.

**TEXAS DEPARTMENT OF AGING AND DISABILITY SERVICES,**
Appellee

**NO. 01–14–00736–CV**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued May 5, 2016

Ashok Bail, Houston, TX, for Appellant.

Greg Abbott, Attorney General of Texas, Erika M. Laremont, Office of the Attorney General, Austin, TX, for Appellee.

Panel consists of Justices Keyes, Huddle, and Lloyd.

## OPINION

Russell Lloyd, Justice

Appellant David Donaldson appeals the trial court's order granting summary judgment in favor of appellee Texas Department of Aging and Disability Services ("DADS") on Donaldson's claims of race and disability discrimination, retaliation, and hostile work environment brought under the Texas Commission on Human Rights Act ("TCHRA") and Title VII of the Civil Rights Act of 1964.[1] Donaldson contends that the trial court erred in rendering summary judgment in favor of DADS because he presented evidence raising genuine issues of material fact on each element challenged by DADS for each of his claims. We affirm in part, and reverse and remand in part.

1. See TEX. LAB. CODE ANN. § 21.051 (West 2015). Title VII is codified at 42 U.S.C. §§ 2000e to 2000e–17.

## Background

In December 2008, Donaldson, an African–American, began his employment with DADS as an Associate Psychologist III at the Brenham State Supported Living Center ("BSSLC").[2] As an Associate Psychologist III, Donaldson was responsible for "developing, implementing, and evaluating behavior support plans . . ., staff training, data collection and reporting, and program evaluation" relating to BSSLC residents. The position is paperwork-intensive and involves observing patients to determine an appropriate behavioral plan and amending pre-existing plans.

On November 19, 2009, Donaldson received performance counseling from his supervisor, Sharon Machinsky, for falling asleep during a staff meeting and for failure to timely submit reports. In response, Donaldson provided DADS with documentation reflecting that he was receiving treatment for insomnia, non-combat-related post-traumatic stress disorder, bi-polar disorder, and anxiety disorder.

On February 24, 2010, Donaldson received a "first level reminder" from Machinsky for continuing job performance issues, specifically "the continued delinquency of [his] reports, the substandard writing of the reports, and the failure to make appropriate corrections in a timely manner." Donaldson claims that he was late with some of his reports because his caseload continued to increase due to the transfer of the caseloads of departing psychologists to the newly hired psychologists including him. On March 1, 2010, Donaldson received another performance counseling for missing a report deadline and then submitting the previous year's

report with only the date changed. Donaldson denies the allegation.

Donaldson alleges that Donna Bradley–Schrick, a Caucasian female, was promoted to Associate Psychologist V in March 2010, but that he did not receive a promotion.

In April 2010, Donaldson informed DADS that he had been diagnosed with prostate cancer and advised his supervisors and managers of his cancer treatment plan. Danielle Hazziez testified that during a staff meeting the next day, Dr. Hancock, Chief Psychologist, "looked at [Donaldson]. She didn't say his name, but she said some people want to be babied—instead of doing their job and doing the programming—making—I mean, writing and developing the positive behavior programs. They want too much assistance."

On May 5, 2010, Hancock met with Donaldson regarding a Positive Behavior Support Plan ("PBSP") he had submitted that contained incorrect information. At their meeting, Donaldson requested accommodations due to his weekly medical treatments, specifically, that he be allowed to miss the weekly class related to preparing PBSPs and that he be provided with assistance to complete his work. Hancock agreed that Donaldson could miss the classes but advised him that he was still responsible for the required instruction and that she would inquire about an alternate time for him to meet with the class instructor. Hancock also assigned a psychology assistant to help Donaldson with his paperwork. Donaldson contends that the assistant assigned to him was promoted to another position one week later and that DADS never provided anyone else to assist him. He further claims that several non-disabled Caucasian psychologists were

---

**2.** The BSSLC houses individuals with developmental and intellectual disabilities and provides "24 hour residential services, comprehensive behavioral treatment services and health care services . . . ." *See About State Supported Living Centers,* http://www.dads. state.tx.us/services/SSLC/index.html (last visited February 2, 2016).

provided with assistants during this same time period.

On May 27, 2010, Donaldson was notified that the PBSPs for three of the individuals assigned to him had not been updated since October or December 2008.[3] Donaldson denies the allegation and contends that Machinsky intentionally transferred the overdue PBSPs from her caseload to his so that she could avoid being reprimanded for untimeliness.

On July 14, 2010, Donaldson was injured while attempting to restrain a patient involved in an altercation with another patient. He further asserts that while he was sitting in a wheelchair awaiting medical attention for his injury, Shawn Cureton, Psychology Manager, and Hancock presented him with a "third-level reminder" and placed him on decision-making leave for one workday.[4] The accompanying memo identified the following performance issues in addition to those noted above:

- April 2010—Donaldson was provided with additional training regarding the data collection process and the writing of past due PBSPs.
- May 10, 2010—Donaldson failed to bring the necessary materials to a meeting with Kathleen Williamson, Psychology Manager, so that he could be re-trained regarding the collection of data and preparation of PBSPs after he missed these classes due to his medical treatment; Donaldson also failed to follow up with Williamson to schedule another meeting time. Donaldson asserts that Williamson left the training ses-

sion because she had to attend another meeting and that when he asked her about re-scheduling the session she told him that it would have to wait until another time.

- June 2010—Donaldson failed to complete a Level of Need (LON) packet for a patient despite several email reminders and the assistance of two psychology assistants, resulting in another psychologist having to complete the packet before the submission deadline. Failure to timely submit LON packets can result in the loss of Medicaid funding for services for that individual. Donaldson contends that the patient in question was not on his caseload and that the psychologist to whom the patient was assigned completed the LON packet.
- July 14, 2010—Donaldson had six out-of-date programs, two of which were eighteen months overdue. Donaldson asserts that the programs were completed in the old format but that they were never converted into the current format.

After receiving the results of blood work and exams, David's cancer specialist recommended that he exercise his right to Family and Medical Leave Act ("FMLA") leave. Donaldson alleges that Hancock contacted him while he was on leave to advise him that he was required to attend a meeting related to DADS's investigation of an administrative complaint. Donaldson asserts that Hancock cancelled the meeting the next day after the State Civil Rights Office contacted her to remind her of Donaldson's FMLA status. He further

---

3. Maintaining updated PBSPs is necessary to ensure DADS's compliance with an ongoing settlement agreement with the U.S. Department of Justice as well as ensuring that modifications to services are made or additional services provided, as needed.

4. A "third-level reminder" is the final level of DADS's formal corrective action process and includes "decision-making leave" as part of the correction.

alleges that although Hancock knew Donaldson was unavailable to attend due to being on leave, she threatened him with termination if he did not report to the meeting, and that she continued to harass and threaten him during his leave.

On July 21 2010, Donaldson received another performance counseling for failing to prepare a PBSP for one of his patients who had arrived more than sixty days earlier. As a result, the patient did not have an action plan in place to help reduce the number of challenging behaviors. Donaldson was asked to develop a performance deficiency plan detailing how he intended to address five past-due PBSPs as well as improve his overall job performance. Donaldson never completed the assignment.

On September 8, 2010, while still on leave, Donaldson filed a complaint with the Health and Human Services Commission Civil Rights Office alleging that DADS discriminated against him based on age and disability after he was placed on a third-level reminder and denied immediate medical attention on July 14, 2010. Donaldson alleges that he was told by several co-workers that Hancock made several sarcastic comments during a staff meeting regarding Donaldson's discrimination complaint.

Donaldson alleges that when he returned to work following his FMLA leave in September 2010, he was assigned to work under another psychologist although DADS was short of psychologists, He further contends that although the new job restrictions outlined by his doctor in her September 2010 work status report did not directly impact his responsibilities as a psychologist, Hancock determined that DADS could not accommodate the job restrictions and, as a result, he was forced to take workers' compensation leave.

On November 12, 2010, Donaldson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Donaldson alleges that Amanda Bowen, a Caucasian female, was promoted to Associate Psychologist V on December 12, 2010, but that he did not receive a promotion.

When Donaldson returned to work in December 2010, he was assigned a partial caseload and placed under the supervision of Bradley–Schrick who micromanaged and excessively monitored him. He further alleges that although many procedures had changed during his absence, and despite advising management on repeated occasions that his injury, fatigue, and nausea were affecting his abilities to meet some of his responsibilities in a timely manner, DADS harassed him by trying to force him to learn an insurmountable amount of information in an unreasonably short period of time rather than reasonably accommodating him.

In January 2011, DADS assigned Donaldson to the Driscoll Gardens unit, a unit Donaldson claims was in disarray and had a backlog. According to Donaldson, DADS failed to give him the resources to succeed there and, in doing so, set him up for failure.

Donaldson contends that, in February 2011, Hancock demanded that Donaldson complete a restraint training session or face termination despite the fact that he was not physically ready due to his prior injury. He alleges that Bradley–Schrick was not required to complete the restraint training.

On April 11, 2011, Donaldson received a memo from Williamson addressing possible disciplinary action and outlining several more performance issues following his

decision-making leave, including the following:

- January 2011—Donaldson failed to adhere to the on-call protocol requiring that the on-call psychologist contact the psychiatrist with questions or issues related to the need for psychoactive medication (i.e., medication that acts as a chemical restraint). In this instance, Donaldson gave the psychiatrist's cell phone number to a nurse and asked the nurse to call the psychiatrist. Donaldson denies the allegation and contends that the nurse took it upon herself to call the psychiatrist whose phone number was included on the list of on-call professionals.

- January 2011—Due to Donaldson's delinquent and incorrect submissions, one of his patients had to wait nearly eight weeks before receiving the medication prescribed by his psychiatrist. Donaldson denies the allegation.

- January 2011—When one of Donaldson's patients left BSSLC to reside in a group home, Donaldson failed to train the staff at the group home on the patient's PBSP and did not arrange for a replacement to conduct the training. Donaldson claims that he tried to contact Hancock about his schedule conflict, to no avail. He further contends that a replacement was, in fact, found and, thus, "[a]ll obligations were met."

- March 2011—Donaldson failed to enter any behavioral data or analysis for several months for residents of his assigned unit. Donaldson claims that several other psychologists were assigned to at least one of the individuals in question because he had been on leave since September 2010 and, thus, they were responsible for the individual's behavioral data and analysis.

Donaldson submitted a written rebuttal to Williamson. Alicia Powell testified that, prior to Donaldson's termination, she overheard Hancock tell her staff that regardless of Donaldson's response, she intended to fire him. On April 14, 2011, DADS terminated Donaldson's employment.

Donaldson filed suit against DADS alleging race, age, and disability discrimination, retaliation, and hostile work environment in violation of Chapter 21 of the Labor Code.[5] He further alleged race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, violations of the Americans with Disabilities Act of 1990 ("ADA") and its subsequent amendments ("ADAAA"),[6] and sued DADS Commissioner Chris Traylor under 42 U.S.C. § 1983. The trial court granted DADS's plea to the jurisdiction on Donaldson's ADA, ADAAA, and 42 U.S.C. § 1983 claims. DADS also moved for traditional and no-evidence summary judgment on Donaldson's race, age, and disability discrimination claims, and retaliation and hostile environment claims under Chapter 21, and his race discrimination and retaliation claims under Title VII. On August 1, 2014, the trial court granted DADS's motion. Donaldson timely filed this appeal.

## Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling un-

---

5. TEX. LAB. CODE ANN. § 21.051.

6. 42 U.S.C. §§ 12101–12213 (2009).

der the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). If the trial court properly granted the no-evidence motion, we do not consider the arguments raised regarding the traditional summary judgment motion. *See id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.–Houston [1st Dist.] 1999, no pet.). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design & Fabrication*, 994 S.W.2d at 834; *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007) (per curiam) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented."). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)). We indulge every

reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003).

### Discrimination Claims

In his first issue, Donaldson contends that the trial court erroneously granted DADS's hybrid motion for summary judgment on his race and disability discrimination claims [7] because he presented evidence raising a fact issue on the elements challenged by DADS in its motion. DADS argues that Donaldson failed to establish a prima facie case for his race and disability discrimination claims. It further asserts that even if Donaldson established a prima facie case, it offered legitimate non-discriminatory reasons for its termination decision and Donaldson failed to present any evidence showing that the proffered reasons were a pretext for discrimination.

#### A. Race Discrimination

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race, the employ-

---

**7.** Donaldson does not appeal the summary judgment granted on his age discrimination claim.

er "discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment...." TEX. LAB. CODE ANN. § 21.051(1) (West 2015). Texas courts look to federal interpretation of analogous federal statutes for guidance because an express purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *see also NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999).

There are two alternative methods of proof in discriminatory treatment cases. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 634 (Tex.2012); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476–77 (Tex.2001) (adopting U.S. Supreme Court's alternative analyses for employment discrimination cases). An employee may prove discrimination by presenting the trial court with direct evidence which requires the court to employ a "mixed-motive" analysis. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–46, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989), *superseded on other grounds by statute as stated in Burrage v. U.S.,* —— U.S. ——, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014) (stating "mixed motives" analysis requires employer to prove it would have made same decision for legitimate reasons even without discriminatory motive); *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (shifting burden of proof to employer to show same employment decision would have been made regardless of discriminatory animus). "Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Jes-*

*persen v. Sweetwater Ranch Apartments,* 390 S.W.3d 644, 653 (Tex.App.–Dallas 2012, no pet.) (citing *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir.2002)). "If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the [adverse] employment decision, the evidence is circumstantial, not direct." *Jespersen,* 390 S.W.3d at 653–54 (citing *Sandstad,* 309 F.3d at 897–98). For workplace comments to provide sufficient evidence of discrimination, the remarks must be (1) related to the protected class, (2) proximate in time to the adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *Chandler v. CSC Applied Techs., LLC,* 376 S.W.3d 802, 821 (Tex.App.–Houston [1st Dist.] 2012, pet. denied). Generally, statements that courts have found to constitute direct evidence of discrimination are insults or slurs made against a protected group. *Jespersen,* 390 S.W.3d at 654; *see also Brown v. E. Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993) (finding open racial slurs to be direct evidence of discrimination).

However, where only circumstantial evidence is available, courts utilize the burden-shifting paradigm established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. at 1824. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In the *McDonnell Douglas* test, the employee's ultimate goal

is to show that the employer's stated reason for its adverse action against the employee was a pretext for discrimination by presenting the trial court with indirect or inferential evidence. *See Quantum Chem.,* 47 S.W.3d at 476; *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. at 1824–26.

### 1. No Direct Evidence of Race Discrimination

In his summary judgment response, Donaldson contends that the following deposition testimony of several co-workers demonstrates discriminatory animus on the part of DADS when it terminated his employment:

- Danielle Hazziez, an African–American psychologist, testified that, in her opinion, DADS treated Caucasian psychologists more favorably than African–American psychologists. She testified that she was treated differently than her Caucasian co-workers and that Paula Hallett and Tamera Davis, two other African–American psychologists, left DADS due to discriminatory treatment.

- Alicia Powell, an African–American psychology assistant, testified that Hancock would roll her eyes when Donaldson arrived for a meeting and would "single him out."

- Treas Manas, an African–American Qualified Developmental Disability Professional ("QDDP"), testified that she felt that Donaldson needed some help and that he did not receive it, and that "they talked to people— African-Americans any kind of way. Tell you what they—they expect you to do."

- Sammie Donald, an African–American QDDP, testified that Donaldson was "picked on" and that DADS

treated African–American psychologists differently with regards to discipline.

None of this testimony establishes that any of the alleged comments or actions occurred at or near the time of Donaldson's termination or were related to the decision to terminate Donaldson's employment. *See Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 153 (5th Cir.1995) (noting co-worker's subjective beliefs that plaintiff suffered discrimination are insufficient to create jury issue); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 25 (Tex.2000) (noting statements made remotely in time by someone not directly connected with termination decisions do not raise fact issue about reason for termination). Accordingly, we conclude that Donaldson did not present any evidence of direct discrimination.

### 2. Donaldson Failed to Establish a Prima Facie Case of Race Discrimination

In the absence of direct evidence of discrimination, Donaldson was required to establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting analysis. To establish a prima facie case of race discrimination, the employee must show that he (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class or others similarly situated were treated more favorably. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex.2008). If the plaintiff is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Quantum Chem.,* 47

S.W.3d at 477 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). The burden then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. at 1826–27. Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier-of-fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106.

▆▆ In its summary judgment motion, DADS challenged the fourth element of Donaldson's race discrimination claim. Specifically, it argued that Donaldson had failed to show that he was replaced by someone outside of the protected class or treated less favorably than other similarly situated employees outside of the protected class. In his summary judgment response and on appeal, Donaldson argues that the above-cited deposition testimony of his co-workers demonstrates that similarly situated employees outside of the protected class were treated more favorably than him.

Hazziez's and Donald's opinions that DADS generally treated Caucasian psychologists more favorably than African-American psychologists says nothing about whether DADS treated Donaldson less favorably than similarly situated comparators and, therefore, does not create a fact issue as to the fourth element. Powell's and Donald's testimony that Donaldson was "singled out" and "picked on" does not explain how he was singled out or picked on, or that he was singled out or picked on based on his race. Similarly, Manas's testimony that Donaldson needed help did not explain how he was denied help or that he was denied help based on his race.

Donaldson also identifies two comparators whom he contends were treated more favorably than him. Specifically, he asserts that two similarly situated Caucasian co-workers, Amanda Bowen and Donna Bradley–Schrick, received promotions but that he did not receive a promotion.

▆▆ "[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *See Lee v. Kan. City S. Ry. Co.,* 574 F.3d 253, 259–60 (5th Cir.2009) (quoting *Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir.1991)). "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex.2005) (citations omitted). Further, to establish that employees are "comparable in all material respects," a plaintiff must also show "that there were no 'differentiating' or mitigating circumstances as would distinguish ... the employer's treatment of them.'" *Ineichen v. Ameritech,* 410 F.3d 956, 960–61 (7th Cir. 2005) (quoting *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir. 2000)); *see Edwards v. Grand Casinos of Miss., Inc.,* 145 Fed.Appx. 946, 948 (5th Cir.2005) (noting that as to similarly situated requirement, circumstances surrounding the compared employees must be "nearly identical") (citing *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221 (5th Cir.2001) (citations omitted).

Here, Donaldson did not present any evidence showing that the circumstances under which Bowen and Bradley–Schrick received promotions were comparable in all material respects. In particular, there is no evidence of their job performance. *See AutoZone, Inc.,* 272 S.W.3d at 594 ("Employees with different responsibili-

ties, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.' ") (quoting *Monarrez*, 177 S.W.3d at 917–18). Absent evidence that Donaldson was treated less favorably than other similarly situated employees outside of the protected class, Donaldson has not raised a fact issue as to the fourth prong of his prima facie case.

Donaldson nevertheless argues that he is not required to identify comparators outside of the protected class who were treated more favorably. Courts have recognized the flexibility inherent in the *McDonnell Douglas* formula and that the precise elements of a prima facie case will vary depending on the circumstances. *See Garcia*, 372 S.W.3d at 640; *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 392 (Tex.App.–Houston [14th Dist.] 2014, pet. denied); *see also Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) (noting that precise requirements of prima facie case can vary depending on context and were "never intended to be rigid, mechanized, or ritualistic."). However, even under an expansive understanding of the fourth prong, Donaldson failed to come forth with evidence demonstrating discriminatory intent on the part of DADS in its decision to terminate his employment.

We note that much of Donaldson's summary judgment evidence consists of refuting his alleged performance issues or the basis for the corrective action taken by DADS. However, Donaldson's subjective belief that DADS gave a false reason for its employment decision is not competent summary judgment evidence. *See Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex.App.–Fort Worth

2000, pet. denied); *see also Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir.2005) ("Management does not have to make proper decisions, only non-discriminatory ones.") Donaldson's other evidence that his caseload increased, overdue PBSPs were transferred to him, he was not provided with sufficient additional training, and that he was assigned to a backlogged unit do not demonstrate that DADS discriminated against him because of his race when it terminated his employment. *See Chandler*, 376 S.W.3d at 814–17 (noting that evidence must raise fact issue regarding discrimination and concluding that stray comments and heavier workload were insufficient to create fact issue).

Because Donaldson failed to present evidence creating a fact issue as to whether similarly situated members outside of the protected class were treated more favorably than him, or other evidence of discriminatory intent, we conclude that the trial court correctly rendered summary judgment in favor of DADS on Donaldson's claim of race discrimination. *See* TEX. R. CIV. P. 166a(c).[8]

### B. *Disability Discrimination Claim*

The TCHRA also prohibits discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." TEX. LAB. CODE ANN. § 21.105 (West 2015). To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he has a "disability;" (2) he is "qualified" for the job; and (3) he suffered an adverse employment decision because of his disability. *Davis v. City of Grapevine*, 188

---

**8.** In light of our conclusion that Donaldson failed to establish a prima facie case of discrimination, we need not proceed to the second and third prongs of analysis under the

*McDonnell Douglas* framework. *See Byers v. Dall. Morning News*, 209 F.3d 419, 427 (5th Cir.2000).

S.W.3d 748, 757 (Tex.App.–Fort Worth 2006, pet. denied) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir.1996)). The plaintiff can show the "qualification" element in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations; or (2) by showing that some reasonable accommodation by the employer would enable him to perform the job. *Turco*, 101 F.3d at 1093; *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 91 (Tex.App.–Austin 1995, no writ).

■ Assuming the plaintiff meets his prima facie burden, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its differential treatment of the employee. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The employer's offer of a legitimate reason eliminates the presumption of unlawful discrimination created by the plaintiff's prima facie showing and leaves the plaintiff with his ultimate burden to prove that the employer's explanation notwithstanding, it engaged in intentional discrimination. *Tex. Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 786–87 (Tex.App.–Dallas 2014, pet. denied).

■ With regard to Donaldson's disability discrimination claim, DADS sought to negate Donaldson's prima facie case by presenting summary judgment evidence that it terminated Donaldson's employment due to his poor job performance and not because of his disabilities. Donaldson asserts that the summary judgment evidence raises a fact issue as to whether his disabilities of cancer and PTSD were the sole reason for his termination.

In support of its contention that Donaldson cannot demonstrate the third prong, i.e., that he was terminated solely because of his alleged disabilities, DADS presented the Notice of Possible Disciplinary Action memo dated April 11, 2011, which outlined Donaldson's alleged violations of work rules, policies, and procedures and performance deficiencies. In addition to citing Donaldson's failure to timely complete reports, update behavioral data, and his submission of substandard work, the memo also addressed Donaldson's (1) "continued lack of communication" with his supervisors, (2) failure to complete required training, (3) failure to follow protocol concerning physician/psychiatrist contact, and (4) failure to attend mandatory meetings or notify his supervisor of anticipated absences. In his summary judgment response, Donaldson denied most of the conduct alleged by DADS as a basis for his termination and, in doing so, asserted that he "has provided ampl[e] summary judgment evidence in the facts portion of this response to create a genuine issue of material fact as to whether [his] disabilities of cancer and PTSD were the sole reason for his termination." DADS argues that notwithstanding Donaldson's denials of most of the allegations, he did not raise a fact issue as to whether his employment was terminated because of his disabilities.

We find little, if any, evidence in the record to show that DADS terminated Donaldson because of his disabilities. However, assuming without deciding that he established a prima facie case, we conclude that DADS met its burden of production to articulate a legitimate non-discriminatory reason for its termination decision. As discussed above, DADS presented summary judgment evidence showing that Donaldson received much corrective action counseling, and was ultimately terminated for, performance deficiencies and work rule violations. *See Ajao v. Bed Bath & Beyond, Inc.*, 265 Fed.Appx. 258, 263 (5th Cir.2008) (noting employer's burden is merely one of pro-

duction) (citing *Crawford v. Formosa Plastics Corp., La.,* 234 F.3d 899, 902 (5th Cir.2000) (finding "unsatisfactory performance as a manager" sufficient to meet burden of production)); *Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 326 (5th Cir.2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge"). Thus, the burden shifts back to Donaldson to show that DADS's proffered reason for his termination was a pretext for discrimination.

 Donaldson contends that DADS's legitimate nondiscriminatory reasons for terminating him were exaggerated and, in some instances, false. In support of this contention, Donaldson relies on his affidavit in which he denies DADS's allegation of poor job performance and offers an explanation for many of the performance issues and work rule violations cited by DADS. However, an employee's denials of bad performance and his subjective belief that his employer has given a false reason for its employment decision is not competent summary judgment evidence. *Elgaghil,* 45 S.W.3d at 140 (noting that to raise fact issue on pretext element of discrimination claim, nonmovant must present evidence "indicating that the non-discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination"); *Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993) (concluding that summary judgment evidence denying reasons for termination was irrelevant and "[plaintiff] must, instead, produce evidence demonstrating that [the City's decisionmakers] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him *on the basis of his age.*". (emphasis in original)); *Little v. Tex. Dep't of Criminal Justice,* 177 S.W.3d 624, 632 (Tex.App.–Houston [1st Dist.]

2014) ("[T]he United States Supreme Court has made it clear that it is not sufficient merely to show that the employer's reasons are false or not credible; the plaintiff must prove that the employer discriminated intentionally.") (citing *Reeves,* 530 U.S. at 146–47, 120 S.Ct. at 2108).

 An employee cannot survive summary judgment merely because he disagrees with the employer's assessment of his performance; rather, the issue is whether the employer's perception of his performance, accurate or not, was the real reason for his termination. *See McCoy v. Tex. Instruments, Inc.,* 183 S.W.3d 548, 555–56 (Tex.App.–Dallas 2006, no pet.) (noting that absent discriminatory motive, disagreement about job performance is not actionable and that even incorrect belief that employee's performance is inadequate constitutes legitimate, non-discriminatory reason for termination). Further, we note that Donaldson concedes that some of the reports he submitted were late, incomplete, or incorrect. *See Ajao,* 265 Fed. Appx. at 263 (finding that in failing to provide evidence of his own good job performance, plaintiff failed to create genuine issue of material fact on whether poor performance reason given by employer was mere pretext for discrimination).

Donaldson also relies on co-workers' testimony that other psychologists were behind in submitting their reports as evidence that DADS's proffered reason is false. However, he presents no evidence showing that any particular psychologist had a comparable number of delinquent reports or similar performance issues. Donaldson also points to Hazziez's testimony that at a staff meeting the day after Donaldson announced that he had been diagnosed with cancer, Hancock "looked at [Donaldson], She didn't say his name, but she said some people want to be babied.... They want too much assis-

tance." This evidence does not raise a fact issue as to whether DADS's proffered reason for termination was false and whether it intentionally discriminated when it decided to terminate him. *See Carlton v. Hous. Cmty. Coll.*, No. 01–11–00249–CV, 2012 WL 3628890, at *19 (Tex.App.–Houston [1st Dist.] Aug. 23, 2012, no pet.) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) ("[The] discrimination laws are not designed to set forth a 'general civility code for the American workplace.' ")).

Because Donaldson failed to raise a fact issue regarding whether DADS did not in good faith believe the reasons given for his termination, but instead used his job performance as a pretext to terminate his employment because of his disability, we conclude that the trial court correctly rendered summary judgment on Donaldson's disability discrimination claim. *See* Tex. R. Civ. P. 166a(c).

Donaldson also alleges the trial court erred in granting summary judgment on his disability discrimination claim because DADS failed to reasonably accommodate his disabilities. In its summary judgment motion, DADS argued that Donaldson presented no evidence raising a fact issue regarding whether DADS failed to provide him with reasonable accommodations.

The elements of a "reasonable accommodation" claim overlap the elements of a disability discrimination claim to some extent. *See Davis*, 188 S.W.3d at 758. Under a reasonable accommodation claim, a plaintiff must show that (1) he has a "disability;" (2) an employer covered by the statute had notice of his disability; (3) with "reasonable accommodations" he could perform the "essential functions" of his position; and (4) the employer refused to make such accommodations. *Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 524 (Tex.

App.–El Paso 2013, no pet.). We note that the *McDonnell Douglas* burden-shifting framework is not applicable to a reasonable accommodation claim. *Davis*, 188 S.W.3d at 759. DADS's summary judgment motion sought only to negate the last element of Donaldson's reasonable accommodation claim, i.e., that it had refused to make reasonable accommodations for Donaldson's disabilities, and did not argue that there was no evidence that Donaldson was qualified to do the job. Indeed, in its appellate brief, DADS "assumed" the opposite, stating "assuming that Donaldson was otherwise qualified to perform the essential functions of the position of Associate Psychologist III...." Therefore, we do not examine whether Donaldson raised a fact issue as to this element but instead address whether a fact issue was raised with regard to whether DADS refused to accommodate him. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) (stating motion for summary judgment must stand or fall on grounds expressly presented in motion); *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979) (noting trial court may not grant summary judgment on ground not presented by movant in writing).

DADS points to Hancock's affidavit in which she stated that during their May 5, 2010 meeting, Donaldson requested accommodations for completing his work while undergoing treatment for cancer and that she assigned Kalissa Thompson, a psychology assistant, to help him with typing his paperwork. DADS argues that "[a]t no point did plaintiff ever complain that these accommodations were not sufficient to help him complete his essential job duties or that he was not being provided these accommodations or that his poor work performance was caused by a lack of accommodations." DADS further con-

tends that "[h]e did not request any additional accommodations."

In his affidavit attached to his summary judgment response, Donaldson acknowledges that Hancock assigned Thompson to help him with his paperwork but claims that she only helped him for one week because she was promoted to another position. Donaldson further states, "I informed Hancock on several occasions that I didn't have an assistant and her response was that all of the psychology assistants were doing other work and she could not assign another psychology assistant to help me."

The San Antonio Court of Appeals recently decided a case with facts similar to those before us. In *Texas Department of State Health Services v. Rockwood*, 468 S.W.3d 147 (Tex.App.–San Antonio 2015, no pet.), Rockwood was employed by the Department as a medication nurse and was responsible for distributing medication to patients receiving mental health treatment at the state hospital. *See id.* at 150. Rockwood contacted Martha Fritz, the hospital's safety manager, to ask that an ergonomic assessment of her workstation be performed in order to make an accommodation for her back due to injuries she had sustained in several car accidents. *See id.*[9] In response, Fritz requested that a stool and a padded rubber mat be placed on the floor at Rockwood's station as a "temporary remedy." *Id.* Shortly thereafter, Rockwood emailed Fritz and again requested a workplace evaluation and stated that the barstool had been removed from the medication room for cleaning and was never returned. *See id.* The Depart-

ment subsequently terminated Rockwood's employment citing job performance issues and her inability to return to work after exhausting all available leave following a serious automobile accident as the reasons. *See id.* at 152.

Rockwood sued the Department alleging that it had violated the TCHRA by, among other things, failing to provide a reasonable accommodation for her disability. *See id.* at 155. The Department filed a plea to the jurisdiction which the trial court denied. *See id.* at 152. On appeal, the Department argued that the trial court erred with respect to Rockwood's reasonable accommodation claim because Rockwood had failed to establish the first, second, and fourth elements of her claim, i.e., that she was disabled, the Department had notice of her disability, and the Department refused to make a reasonable accommodation. *See id.* at 155.

With respect to the fourth element, the court found that Fritz and Rockwood had begun engaging in an interactive process as required under the TCHRA to accommodate Rockwood's disability. *See id.* at 156. The court noted, however, that the process broke down when Rockwood was not provided with a stool and a mat. *See id.* The court stated that "[a]lthough it appears a stool may have been provided for a short period of time after Fritz made the email request, the stool did not remain available for Rockwood to use, and the mat was never provided." *Id.* The court concluded that the evidence therefore raised a fact issue on the fourth element of Rockwood's claim. *See id.*[10]

**9.** Rockwood's job required her to stand at her worksite throughout the day on a solid concrete surface. *Tex. Dep't of State Health Svcs. v. Rockwood*, 468 S.W.3d 147, 150 (Tex.App.–San Antonio 2015, no pet.).

**10.** The *Rockwood* court noted that the standard of review applicable to a trial court's ruling on a plea to the jurisdiction "mirrors our review of summary judgments, and we therefore take as true all evidence favorable to [Rockwood], indulging every reasonable infer-

Here, although DADS initially accommodated Donaldson by assigning Thomson to assist him, there is evidence, Donaldson's testimony, that, if believed, shows that it did not continue to accommodate him once Thompson was promoted despite several requests. Viewing the evidence in the light most favorable to Donaldson, we conclude that he presented more than a scintilla of evidence raising a fact issue on this element of his reasonable accommodation claim. *See* Tex. R. Civ. P. 166a(c). Because the trial court erred in granting summary judgment in favor of DADS on Donaldson's reasonable accommodation claim, we sustain the portion of Donaldson's first issue related to this claim.

### Retaliation Claim

In his second issue, Donaldson contends that the trial court erred in rendering summary judgment in favor of DADS on his retaliation claim. DADS argues that the trial court properly granted summary judgment on Donaldson's retaliation claim because he failed to establish his prima facie case. It further asserts that even if Donaldson established his prima facie case, he failed to overcome the legitimate non-retaliatory reasons for his termination.

Both Title VII and the TCHRA prohibit employers from retaliating against employees for engaging in protected activities, including opposing a discriminatory practice, making a charge, or filing a complaint. *See* 42 U.S.C. § 2000e–3(a) (2005); Tex. Lab. Code Ann. § 21.055 (West 2015). The law governing retaliation claims under Title VII and the TCHRA is largely identical.[1] *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir.2004); *see also* Tex. Lab. Code Ann. § 21.001(1); *Quantum Chem.*, 47 S.W.3d at 476; *Brewer v. Coll. of the Mainland*, 441 S.W.3d 723, 729 (Tex.App.–Houston [1st Dist.]

2014, no pet.). The TCHRA provides that "[a]n employer ... commits an unlawful employment practice if the employer ... retaliates or discriminates against a person who, under this chapter: 1) opposes a discriminatory practice; 2) makes or files a charge; 3) files a complaint; or 4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055.

To establish a prima facie case under Title VII or the TCHRA, a plaintiff must show that (1) he participated in a protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action. *See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir.1999) (Title VII); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex.App.–Houston [14th Dist.] 2007, pet. denied) (TCHRA). The employee must establish that absent his protected activity, the adverse employment action would not have occurred when it did. *See Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 262 (Tex.App.–Dallas 2009, pet. denied); *McMillon v. Tex. Dep't of Ins.*, 963 S.W.2d 935, 940 (Tex.App.–Austin 1998, no pet.). In other words, the plaintiff must prove that he would not have suffered an adverse employment action "but for" engaging in the protected activity. *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 901 (Tex.App.–Houston [14th Dist.] 2013, no pet.); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013) (discussing causation requirement for retaliation claim brought under Title VII). However, the employee "need not establish that the protected activity was the sole cause of the employment action." *Herbert v. City of Forest*

---

ence and resolving any doubts in her favor." *Id.* at 152 (citation omitted).

*Hill,* 189 S.W.3d 369, 377 (Tex.App.–Fort Worth 2006, no pet.).

 With regard to the second prong, the scope of the retaliation provision is not limited to conduct that constitutes "ultimate employment decisions"; rather, the provision "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington,* 548 U.S. at 67, 126 S.Ct. at 2414. However, the retaliation provision does not protect an individual from all retaliation, but from actions that a reasonable employee would have found materially adverse. *Id.* at 67–68, 126 S.Ct. at 2414–15. "Material" employer actions are those "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* at 68, 126 S.Ct. at 2415 (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 848, 136 L.Ed.2d 808 (1997)). "Normally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.*; *Navy,* 407 S.W.3d at 901. This objective standard is applied to a fact-specific inquiry "because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington,* 548 U.S. at 69, 126 S.Ct. at 2415. The standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the complaint. *Id.* at 69, 126 S.Ct. at 2416.

It is undisputed that Donaldson's filing of an internal discrimination complaint on September 8, 2010 and an EEOC charge on November 12, 2010, were protected activities. *See* TEX. LAB. CODE ANN. § 21.055. It is further undisputed that an adverse employment action occurred when DADS terminated Donaldson's employment on April 14, 2011. Donaldson, however, also argues that all actions taken against him after September 8, 2010 are adverse employment actions. Specifically, he complains of the following: (1) Hancock made sarcastic remarks regarding Donaldson's internal discrimination complaint during a staff meeting; (2) he was not given a full caseload following his return to work on September 13, 2010, after taking FMLA leave; (3) DADS failed to accommodate his job restrictions when he returned from FMLA leave; (4) he was forced to share an office and was micromanaged by a peer psychologist; (5) in January 2011, he was transferred to the Driscoll Gardens Unit, a unit in disarray and with a heavy workload; (6) he had a hostile verbal exchange with Hancock regarding why he had not completed restraint training.

 With regard to Hancock's alleged remarks, although they were clearly linked to Donaldson's filing of his internal complaint, "a supervisor's mention, or even criticism, of an employee's EEO complaints does not itself constitute such 'material adversity' that would 'dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Holloway v. Dep't of Veterans Affairs,* 309 Fed.Appx. 816, 819 (5th Cir.2009) (quoting *Burlington,* 548 U.S. at 57, 126 S.Ct. at 2409). Further, "[t]he fact that the supervisor made the comment on only one occasion and that no adverse consequences followed therefrom further weighs against a finding of material adversity." *Id.* (internal citation omitted).

 Donaldson alleges that he was not given a full caseload and was made to work under another psychologist upon his return. However, the summary judgment evidence shows that Donaldson was on leave from July to September 2010, and that when he returned he was assigned to a new unit and was asked to observe another psychologist and become familiar with the individuals housed there. This is not the type of employer action that would deter a reasonable victim of discrimination

from complaining about the discriminatory conduct and is thus not a materially adverse action. *See Burlington,* 548 U.S. at 68, 126 S.Ct. at 2415; *Navy,* 407 S.W.3d at 902.

Donaldson also claims that DADS failed to accommodate his job restrictions when he returned from leave in September 2010. However, the summary judgment record includes the September 2010 work status report completed by Donaldson's physician that medically restricted Donaldson from working with patients. Because the essential duties of an Associate Psychologist III include working directly with patients with emotional and/or behavioral problems and can involve patients who are violent, DADS was unable to accommodate these restrictions.

■ With regard to Donaldson's claims that he was forced to share an office with, and was micromanaged by, a peer psychologist when he returned from workers' compensation leave in December 2010, and that Hancock engaged in a hostile exchange with him regarding why he had not completed patient restraint training, these action can hardly be characterized as the sort of materially adverse action that would deter an employee from making a complaint. *See Burlington,* 548 U.S. at 68, 126 S.Ct. at 2415; *Navy,* 407 S.W.3d at 902.

■ Donaldson also contends that DADS took an adverse employment action when it reassigned him to the Driscoll Gardens Unit in January 2011. In support of his contention, he relies on his affidavit and Manas's testimony that there were papers everywhere in his new office when he arrived, the workload was backed up, and there was no psychology assistant assigned to the unit. In response, DADS points to Hancock's testimony that she assigned Donaldson to the new unit because most of its residents did not require

a PBSP and, thus, this would reduce the number of PBSPs for which he would be responsible.

Donaldson presented no evidence that his transfer to the new unit involved work that was appreciably less prestigious, involved less responsibility, had less overtime opportunities, or left less room for advancement. *See Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 332–33 (5th Cir.2009) (finding no adverse employment action taken where plaintiff's reassignment did not affect her job title, grade, hours, salary, or benefits, her duties were unchanged, and there was no evidence that she suffered diminution in prestige or change in standing among her co-workers); *Sharp v. City of Hous.,* 164 F.3d 923, 933 (5th Cir.1999) (noting transfer may constitute demotion and, thus, materially adverse action if new position proves objectively worse, such as being less prestigious or less interesting or providing less room for advancement). There is also no evidence that the reassignment impacted Donaldson's job title, job grade, salary or benefits. *See Aryain v. Wal–Mart Stores Tex. LP,* 534 F.3d 473, 485 (5th Cir.2008) (noting determination whether reassignment constituted materially adverse employment decision should include consideration of circumstances such as whether reassignment affected employee's job title, grade, duties hours, salary, or benefits or cause diminution or increase in prestige or standing among coworkers). Further, although Donaldson argues that the reassignment was materially adverse because of the backlog and lack of clerical assistance, he did not present any evidence showing how it differed, if at all, from his previous assignment in which he was behind in his paperwork and for which he alleges he received no clerical help.

■ Having concluded that Donaldson's termination is the only materially

adverse action that occurred following his protected activity, we now consider whether he established a causal connection between the filing of his discrimination complaints and his termination. *See Dias,* 214 S.W.3d at 676. Evidence sufficient to establish a causal link between an adverse employment decision and a protected activity may include: "(1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and discharge." *Crutcher v. Dall. Indep. Sch. Dist.,* 410 S.W.3d 487, 494 (Tex.App.–Dallas 2013, no pet.) (citing *Green v. Lowe's Home Ctrs., Inc.,* 199 S.W.3d 514, 519 (Tex.App.–Houston [1st Dist.] 2006, pet. denied) (discussing factors in context of termination of employment).

Donaldson presented no evidence that DADS failed to follow its own policies and procedures in terminating his employment, treated other similarly-situated persons differently, or that the stated reasons for his termination were false. Donaldson claims, however, that he established a causal connection because Hancock knew he had filed a discrimination complaint and he was terminated only six months later.[11] However, the Fifth Circuit has concluded that five and six months between a protected activity and an adverse employment action are too long to be causally connected. *See Gonzales v. Dupont Powder Coatings USA, Inc.,* 546 Fed.Appx. 378, 379 (5th Cir.2013) ("We agree that the passage of six months here is too great a delay to support a causal connection."); *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471–72 (5th Cir.2002) (finding five-month period between protected activity and adverse employment action did not establish prima facie retaliation claim). Thus, the only evidence Donaldson presented demonstrating a causal link between his protected activities and his termination was Hancock's knowledge of his complaints. This evidence, standing alone, is insufficient to demonstrate the required causal link of a prima facie retaliation case. *See Gorman v. Verizon Wireless Tex., LLC,* No. 4:11–CV–729, 2013 WL 4520187, *4–5 (S.D.Tex., Aug. 24, 2013) (concluding fact that decision-maker knew of protected activity is not sufficient to demonstrate causality for purpose of establishing prima facie case).

Because Donaldson failed to present evidence raising a fact issue as to whether a causal connection existed between his protected activity and the adverse employment actions, we conclude that the trial court correctly granted summary judgment in favor of DADS on his retaliation claim. *See* Tex. R. Civ. P. 166a(c). We overrule Donaldson's second issue.

## Hostile Environment Claim

In his third issue, Donaldson contends that the trial court erred in rendering summary judgment on his hostile environment claim because he presented evidence raising fact issues as to the elements challenged by DADS in its summary judgment motion. DADS argues that the trial court properly granted summary judgment on Donaldson's hostile environment claim because he failed to establish his prima facie case.

11. There was a seven-month period between the filing of his internal complaint and his termination and a five-month period between the filing of his EEOC charge and his termination.

A hostile work environment claim "entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex.App.-Texarkana 2008, pet. denied) (citing *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). The elements of a prima facie case of hostile work environment are: "(1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex.App.-Houston [1st Dist.] 2015, no pet.). An employee complaining of harassment by a supervisor need only show the first four elements. *Id.*

To satisfy the fourth element of a hostile environment claim, a plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment. *See Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir.2007) (citations omitted); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex.2010) (noting abusive environment is created "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'") (citation omitted). The work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive and one that the victim perceived to be so. *City of Hous. v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App.—Eastland 2005, pet. denied). In reviewing a hostile work environment claim, we consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Id.*; *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 407 (Tex.App.—El Paso 2002, pet. denied).

In its summary judgment motion and reply, DADS argued that Donaldson failed to present evidence creating a fact issue as to the third and fourth elements, that is, that the alleged harassing behavior was based on his race or disability and the harassment affected a term, condition or privilege of his employment. In his response, Donaldson alleged that he was harassed when DADS issued him a third-level reminder after he was injured while trying to restrain a patient and was awaiting transportation to the hospital. He further alleges that the following incidents of harassment occurred after he returned from workers' compensation leave in December 2010: (1) he was only given a partial caseload; (2) he was forced to share an office with a fellow psychologist who supervised, micromanaged, and excessively monitored him; (3) he was forced to learn an insurmountable amount of information in an unreasonably short period of time; (3) Hancock confronted him about why he had not completed restraint training; and (4) Hancock did not provide him with a back-up for his "on-call" duties while he was injured.

Taking these alleged incidents of harassment as true, we nevertheless conclude that Donaldson's evidence does not support his argument that DADS's actions

were based on his race or disability. We further conclude that the evidence does not raise a fact issue as to the fourth element, i.e., whether the complained-of conduct was "severe or pervasive enough" that it "altered the conditions of employment and created an abusive work environment." *Anderson*, 458 S.W.3d at 647. As the Fifth Circuit has noted, Title VII does not establish a civility code in the workplace. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir.1999). In order to be actionable, the conduct "must be more than rude or offensive comments" and must rise beyond "isolated incidents." *Hockman v. Westward Commcn's, LLC*, 407 F.3d 317, 326 (5th Cir.2004).

■ While DADS's issuance of a corrective action to Donaldson after he had been injured and was awaiting medical attention might be characterized as offensive, this isolated incident is not so severe in nature so as to destroy Donaldson's opportunity to succeed in the workplace. *See Arensdorf v. Snow*, No. H–05–2622, 2006 WL 3302532, at *11 (S.D.Tex. Nov. 13, 2006) (concluding supervisor's actions in evaluating plaintiff's performance, counseling her on performance deficiencies, and placing her on performance improvement plan did not constitute harassment but instead were personnel decisions related to plaintiff's job performance.), *aff'd*, 259 Fed. Appx. 639, 644 (5th Cir.2007).

■ The other complained-of conduct—being given a partial caseload, forced to share an office with, and being supervised by, a colleague, required to absorb a significant amount of information in a short period of time, confronted about his failure to complete training, and denied back-up for his on-call duties—does not rise to the level of objectively severe conduct sufficient to alter Donaldson's employment, nor does Donaldson explain how this conduct harassed him. Further, Don-

aldson presented no evidence raising a fact issue regarding whether he was physically threatened or publicly humiliated by these incidents or that the actions unreasonably interfered with his work performance. *Fletcher*, 166 S.W.3d at 489; *Gonzales*, 72 S.W.3d at 407. Because we conclude that Donaldson did not present evidence creating a fact issue on his prima facie case of hostile work environment, the trial court properly rendered summary judgment on his hostile work environment claim. *See* TEX. R. CIV. P. 166a(c). We therefore overrule Donaldson's third issue.

### Conclusion

We reverse and remand the portion of the trial court's judgment granting summary judgment in favor of DADS on Donaldson's reasonable accommodation claim, and we affirm the remainder of the trial court's judgment.

Justice Keyes, concurring and dissenting.

Evelyn V. Keyes, Justice, concurring and dissenting.

The majority opinion in this case creates and analyzes an unpleaded "reasonable accommodation" claim out of the second element of a disability discrimination claim (the element requiring that the plaintiff show he was qualified to perform his job either (1) with or (2) without "reasonable accommodation"). And it decides that that element, as a separate cause of action, keeps alive for trial a three-year-old governmental employee disability discrimination claim against the Texas Department of Age and Disability Services (DADS) that it has already dismissed as without merit on other grounds. By creating this separate claim for "reasonable accommodation" in a discrimination suit it declares cannot be won, the majority throws the

doors of the Texas state courts open to meritless disability discrimination claims that could never survive under the federal Americans with Disabilities Act on which the Texas disability discrimination act was modeled.

Furthermore, in requiring that DADS have addressed the unpleaded "reasonable accommodation" claim in its no-evidence motion for summary judgment, the majority imposes a far too stringent pleading burden on no-evidence motions for summary judgment that does not exist under Texas Rule of Civil Procedure 166a(i). The majority erroneously analyzes Donaldson's claim that DADS failed to provide him reasonable accommodation for his disability as distinct from his cause of action for disability discrimination and misapplies the standard of review for no-evidence summary judgments under Texas's discrimination laws to preserve Donaldson's "reasonable accommodation claim," even as it affirms the summary judgment on Donaldson's disability discrimination claim on the ground that he cannot prove disability discrimination as a matter of law.

Therefore, I respectfully dissent. I disagree with the majority's conclusion that Donaldson has raised a fact issue sufficient to withstand summary judgment on a "reasonable accommodation" claim that is separate and distinct from his claim for disability discrimination under the Texas Commission on Human Rights Act ("TCHRA"), set out in Texas Labor Code Chapter 21. I concur in the majority's judgment insofar as it affirms the trial court's summary judgment on appellant David Donaldson's federal and state claims against the Texas Department of Aging and Disability Services ("DADS").

I would affirm the summary judgment against Donaldson on all of his claims. I would not remand this case to continue consuming state litigant and judicial resources even after it has been conclusively shown that all of Donaldson's claims have no merit.

### Background

Donaldson's suit against DADS alleged race, age, and disability discrimination, retaliation, and hostile work environment in violation of the TCHRA;[1] race discrimination and retaliation under Title VII of the Civil Rights Act of 1964;[2] and violations of the Americans with Disabilities Act of 1990 ("ADA") and its subsequent amendments ("ADAAA").[3] He also alleged a claim against DADS Commissioner Chris Traylor under Title 42, section 1983 of the United States Code.[4] Specifically, he alleged that DADS' conduct leading up to his termination:

constitute[d] retaliation and discrimination in violation of the [TCHRA], Texas Labor Code, Sections 21.051, et. seq. (discrimination by employer, race, color, and disability), Sec. 21.055 (retaliation), Sec. 21.101 (Age Discrimination), Sec. 21.105 (Disability Discrimination), Sec. 21.122, Sec. 21.125 and Sec. 21.128. The stated reason for Donaldson's termination from the Defendants was false, and was mere pretext for unlawful retaliation and discriminatory treatment, in violation of Texas Labor Code, Sections 21.051, et. seq. (discrimination by employer, race, color, and disability), Sec. 21.055 (retaliation), Sec. 21.101 (Age Dis-

1. TEX. LAB. CODE ANN. §§ 21.001–.556 (Vernon 2015 & Supp.2015).

2. Title VII is codified at 42 U.S.C. §§ 2000e to 2000e–17.

3. 42 U.S.C. §§ 12101–12213.

4. 42 U.S.C. § 1983.

crimination), Sec. 21.105 (Disability Discrimination), Sec. 21.122, Sec. 21.125 and Sec. 21.128.

Donaldson also asserted that he "was subjected to a hostile work environment" and that DADS' "conduct in harassing and discharging" him violated various provisions of the Labor Code, including sections 21.051 and 21.128.

The trial court granted DADS' plea to the jurisdiction on Donaldson's ADA, ADAAA, and section 1983 claims, and they are not before us. DADS then filed a no-evidence and traditional motion for summary judgment on Donaldson's remaining claims, addressing Donaldson's "reasonable accommodation" claim within the framework of its arguments against his disability discrimination claim. Likewise, Donaldson's response to DADS' motion for summary judgment addressed "reasonable accommodation" in the context of his disability discrimination claim. He argued that he could "demonstrate that he was subjected to disability discrimination under the Texas Labor Code" because he "was denied a requested reasonable accommodation" and "can demonstrate that his disability was the sole reason for his termination." He further asserted that he could overcome the legitimate, non-discriminatory, non-retaliatory reasons for his termination.

The trial court granted DADS' motion for summary judgment. Donaldson appealed, arguing that the trial court erred in "dismissing [his] disability discrimination claim and race discrimination claim," in "dismissing [his] retaliation claim," and in dismissing his "hostile work environment claim." Donaldson's only mention of DADS' failure to provide reasonable accommodation for his disability was to call it an "important issue" in the context of his disability discrimination claim. He argued that his "summary judgment evidence re-vealed that [DADS] did not accommodate [him] and that Caucasian psychologists were given preferential treatment regarding help from assistants. This discriminatory treatment ha[d] broad implications" impacting his ultimate performance and demonstrated that DADS harassed him and discriminated against him in terminating him for failure to complete the required reports. Thus, the only issues identified by Donaldson on appeal are the wrongful dismissal on summary judgment of his race, age, disability discrimination, retaliation, and hostile work environment claims under the TCHRA and his race discrimination and retaliation claims under Title VII. Nowhere in his pleadings, his response to the motion for summary judgment, or his brief on appeal does Donaldson assert a cause of action for "failure to reasonably accommodate" that is distinct from his disability discrimination claim.

The majority affirms the summary judgment in favor of DADS with the sole exception of Donaldson's "claim" for reasonable accommodation, as to which it reverses the trial court and remands the case, holding that Donaldson has raised a fact issue for trial. I disagree with the majority's conclusion that Donaldson asserted a reasonable accommodation claim independent of his disability discrimination claim. And even if he had, I disagree that the TCHRA provides a separate claim of failure to make a reasonable accommodation that is applicable to the facts of this case and reflected in the pleadings, and I disagree that Donaldson raised a fact issue on such a "claim." I believe the majority has incorrectly read the pleadings and motions in this case, has misapplied the no-evidence summary judgment standard of review for disability discrimination claims, and has reached an incorrect holding.

## Standard of Review

### A. Summary Judgment

DADS filed a hybrid traditional and no-evidence motion for summary judgment against Donaldson on all of his claims, including his disability discrimination claim. *See* TEX. R. CIV. P. 166a(c), (i).

Texas's no-evidence summary judgment rule provides that, after adequate time for discovery and without presenting evidence, a party may move for summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.–Houston [1st Dist.] 1999, no pet.). "The motion must state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). The Texas Supreme Court has construed this as a "fair notice" requirement. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex.2009). To meet this requirement, the movant need only set forth the elements to define the issues for summary judgment and to allow the non-movant sufficient information to oppose the motion. *See id.* The burden then shifts to the non-movant to produce more than a scintilla of evidence on each of the challenged elements. *See id.* at 310. "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on the challenged evidence. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006).

### B. Disability Discrimination Claim Under Texas Labor Code Chapter 21

Donaldson alleged that DADS violated the TCHRA. Section 21.051 of the TCHRA provides, in relevant part:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer ... fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.

TEX. LAB. CODE ANN. § 21.051. Section 21.105 provides that an employer may be held liable only for discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." *Id.* § 21.105. Section 21.128 provides that it is "an unlawful employment practice" for an employer covered by the chapter "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee" unless the employer "demonstrates that the accommodation would impose an undue hardship on the operation of the business." *Id.* § 21.128.

Because one of the policies behind the adoption of the TCHRA was to further federal anti-discrimination policies embodied in Title VII of the Civil Rights Act of 1964 and Title I of the ADA and its amendments, the Texas courts follow federal precedent in construing Labor Code Chapter 21. *See Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 522–23 (Tex.App.–El Paso 2013, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 756–57 (Tex. App.–Fort Worth 2006, pet. denied); *see also Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100 (Tex.2004) ("[O]ne purpose of chapter 21 ... is to further the policies of Title I [of the ADA.] Accordingly, in construing and applying chapter 21, we are guided by federal law.").

To establish a disability discrimination claim, Donaldson, as the plaintiff, had the initial burden of presenting a *prima facie* case of discrimination. *See Hagood*, 408 S.W.3d at 523; *Davis*, 188 S.W.3d at 757. To establish a *prima facie* case of disability discrimination, the plaintiff must show that "(1) he has a 'disability'; (2) he is 'qualified' for the job; and (3) he suffered an adverse employment decision because of his disability." *Hagood*, 408 S.W.3d at 523. The plaintiff may satisfy the second element, that of showing that he is "qualified" for the job, "in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations; or (2) by showing that some reasonable accommodation by the employer would enable him to perform the job." *Id.* "[T]o maintain an action under either the ADA or the TCHRA, a plaintiff must demonstrate that [he] is a qualified individual with a disability." *Cornyn v. Speiser, Krause, Madole, Mendelsohn & Jackson*, 966 S.W.2d 645, 648–49 (Tex. App.–San Antonio 1998, pet. denied). "If no reasonable accommodation would enable the plaintiff to perform the essential functions of his position, then he is not a 'qualified individual' with a disability." *Hagood*, 408 S.W.3d at 526.

Thus, to avoid a no-evidence summary judgment on a disability discrimination claim under the TCHRA in which the second element of the claim is challenged, a plaintiff must produce evidence that he is qualified for the job without modification or accommodation or that he is qualified with reasonable accommodation. Should he choose to prove that he is qualified to perform his job with reasonable accommodation, Texas courts have held that

> to establish a *prima facie* case of discrimination based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) that he is an individual who has a disability

within the meaning of the ADA; (2) that an employer covered by the statute had notice of his disability; (3) that with reasonable accommodations he could perform the essential functions of the position; and (4) that the employer has refused to make such accommodations.

*Davis*, 188 S.W.3d at 758; *see Hagood*, 408 S.W.3d at 524.

"[I]f the plaintiff is successful [in showing a *prima facie* case of disability discrimination], the burden of production shifts to the defendant employer to show a legitimate and non-discriminatory basis for the adverse employment decision." *Davis*, 188 S.W.3d at 757 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). If the employer carries its burden, the presumption of unlawful discrimination created by the plaintiff's *prima facie* showing is eliminated, and the "ultimate burden" shifts back to the plaintiff to prove that, notwithstanding its explanation, the employer engaged in intentional discrimination. *Hagood*, 408 S.W.3d at 523–24. In other words, if the defendant employer demonstrates a non-discriminatory reason for its action, the plaintiff must show that the proffered reason is merely a pretext. *Davis*, 188 S.W.3d at 757–58 (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). But "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 757 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). "[T]he intermediate burdens of production alternate between the plaintiff and the defendant and serve to eliminate claims at an earlier stage if no fact dispute exists that requires the court or jury to reach this ultimate question."

*Id.* (citing *Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–95).

## Summary Judgment Burden of Proof on Donaldson's TCHRA Claim

Here, Donaldson pled that he was qualified to perform his job as an Associate Psychologist III at DADS but that DADS refused to make reasonable accommodation for his disability—cancer—and terminated him because of his disability.

DADS expressly set out in its summary judgment motion the elements of a disability discrimination claim with and without reasonable accommodation and challenged Donaldson to produce evidence on each of the elements of his claim. Among other things, it recited the passage quoted from *Davis* above regarding the plaintiff's burden to make a prima facie case of discrimination in order to proceed with its discrimination claim in a section entitled "a. Plaintiff was not denied any reasonable accommodation requested." It then stated:

> Thus, Plaintiff bears the burden of proving that he could reasonably perform, or was "otherwise qualified" for, his job. *Ketcher v. Wal–Mart Stores, Inc.,* 122 F.Supp.2d 747, 755 (S.D.Tex. 2000). Plaintiff could demonstrate that he was otherwise qualified for his job by showing that: (1) he could perform all essential job functions without accommodations, or (2) with some reasonable accommodation by DADS, he could have performed the job. *Ketcher v. Wal–Mart Stores, Inc.,* 122 F.Supp.2d 747, 755 (S.D.Tex.2000); *see Davis,* 188 S.W.3d at 758 (holding that a plaintiff establishes her prima facie case based on her employer's failure to provide reasonable accommodation by proving that, with reasonable accommodations, she could perform the essential functions of her job and that the employer

refused to make those accommodations)......

Therefore, to carry his no-evidence summary judgment *prima facie* burden of proof on his TCHRA disability discrimination claim, Donaldson had to produce more than a scintilla of evidence that (1) he had a disability—cancer—of which DADS had knowledge, (2) he was qualified for his job without accommodation or that he was qualified for his job with accommodation but DADS refused to make reasonable accommodations for his disability, and (3) DADS terminated him because of his disability. *See* Tex. R. Civ. P. 166a(i); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hagood,* 408 S.W.3d at 523; *Davis,* 188 S.W.3d at 757. If he failed to produce evidence on any of these elements sufficient to carry his *prima facie* burden proof, the trial court was required to enter summary judgment against him and this Court is required to affirm the summary judgment. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094; *Davis,* 188 S.W.3d at 757–58; *see also* Tex. R. Civ. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact [on the challenged elements].").

If Donaldson did produce evidence on each of the elements of his disability discrimination claim, carrying his no-evidence summary judgment burden of proof at the *prima facie* stage, the burden of production would then shift to DADS to show that it had a non-discriminatory reason for terminating him. *See Hagood,* 408 S.W.3d at 523–24. If DADS then carried its burden of production, the summary judgment should have been decided on traditional grounds against Donaldson "to eliminate [his] claim[] at an earlier stage [because] no fact dispute exists that requires the court or jury to reach [the] ultimate ques-

tion" as to whether DADS intentionally discriminated against him. *See Davis*, 188 S.W.3d at 757–58 (citing *Burdine*, 450 U.S. at 253–55, 101 S.Ct. at 1093–95).

The majority correctly recites the law. However, it reaches no conclusion regarding whether Donaldson established his *prima facie* case of discrimination with respect to any of the elements, as required by the no-evidence summary judgment rule and the case law construing the plaintiff's burden of proof in a disability discrimination case. Instead, it *assumes* that Donaldson carried his *prima facie* burden of proof And it then moves on to *DADS'* burden to show that it had a non-discriminatory reason for terminating Donaldson.

The majority reasons that "DADS presented summary judgment evidence showing that Donaldson received much corrective action counseling, and was ultimately terminated for performance deficiencies and work rule violations." Op. at 437. And it observes that Donaldson offered only conclusory denials and excuses of his documented poor performance and that "an employee's denials of bad performance and his subjective belief that his employer has given a false reason for its employment decision is not competent summary judgment evidence." Op. at 438 (citing *Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 140–41 (Tex.App.–Fort Worth 2000, pet. denied)). Also, it "note[s] that Donaldson concedes that some of his reports he submitted were late, incomplete, or incorrect," and "he presents no evidence showing that any particular psychologist had a comparable number of delinquent reports or similar performance issues." Op. at 438. Thus, it concludes, "We find little, if any, evidence in the record to show that DADS terminated Donaldson because of his disabilities. However, assuming without deciding that he established a prima facie case, we conclude that DADS met

its burden of production to articulate a legitimate non-discriminatory reason for its termination decision." Op. at 437.

The majority thus assumes that Donaldson carried his *prima facie* burden of proof, which required him to produce evidence (1) that he had a disability, (2) that he was qualified for his job with or without reasonable accommodation *or* that, with reasonable accommodation which DADS refused to make, he could perform the essential functions of his job, and (3) that he was terminated. And it then moves on to affirm the summary judgment on Donaldson's disability discrimination claim on the ground that DADS showed that it had a non-discriminatory reason to terminate him—namely, that he was not qualified for his job.

In sum, the majority both applies the wrong standard of review to the no-evidence summary judgment entered against Donaldson and contradicts itself on the merits of his claim. Nevertheless, if the majority had stopped its analysis here, I would concur in its judgment. However, the majority compounds its errors by going back to the proof of the second element of Donaldson's disability discrimination claim and holding that he raised a material fact issue as to whether DADS provided reasonable accommodation for his disability. In spite of the fact that nothing in the record before the trial court raised a separate "reasonable accommodation" claim and the fact that Donaldson does not assert in his brief on appeal that he had a distinct reasonable accommodation claim that was erroneously dismissed on summary judgment, the majority takes it upon itself to address "reasonable accommodation" as a separate claim from disability discrimination and remands for trial the discrimination issue it has already decided adversely to Donaldson as a matter of law. The majority should have treated Donald-

son's arguments concerning DADS' failure to reasonably accommodate his disability—as the parties and the trial court did—as one of two alternative ways of proving the second prong of his disability discrimination claim—the only disability claim he pled—and it should have affirmed the judgment of the trial court on all claims.

I would not review the summary judgment the way the majority does. Nor would I conclude that any part of his disability discrimination claim under the TCHRA survives summary judgment and should be remanded for trial.

**Donaldson's Failure to Meet His Prima Facie Burden of Proof**

In both the no-evidence and traditional portions of its motion for summary judgment, DADS argued that the burden was on Donaldson to prove that he was qualified for the job he held at DADS and that he could not do so. *See Hagood*, 408 S.W.3d at 523 (qualification for job is essential element of discrimination claim). It provided evidence of the essential functions of Donaldson's position—an Associate Psychologist III—indicating that most of the work involved patient interaction, including interaction with clients who are violent, and included extensive paper work to implement and document behavioral support plans. Specifically, DADS presented evidence that an Associate Psychologist III's essential job functions included:

- Conducting functional behavioral assessments and ensuring the development and approval of behavior support plans to meet clients' needs;
- Conducting or ensuring training for staff in applied behavior analysis, individual behavior support plans and other relevant topics to provide adequate staff training to facilitate optimal treatment and training;
- Monitoring and evaluating clients' behavior support plans to ensure their effective implementation; and
- Providing documentation (including data tables, graphs and progress notes) to reflect and evaluate clients' response to treatment.

DADS also presented summary judgment evidence that it was subject to compliance with a settlement agreement between the State of Texas and the United States Department of Justice requiring more extensive documentation of its compliance with generally-accepted professional standards.

The only evidence Donaldson produced in support of the second element of his disability discrimination claim was his own conclusory and self-serving affidavit denying DADS' assessment of his performance and, in some instances, asserting that other psychologists at the facility were also responsible for the delinquencies and failures. However, Donaldson's conclusory denials are not competent summary judgment evidence. *See Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 931 (Tex.App.–Houston [14th Dist.] 2013, pet. denied) (affidavits containing conclusory statements that fail to provide underlying facts to support their conclusions are not proper summary judgment evidence); *see also Ayeni v. State*, 440 S.W.3d 707, 712 (Tex.App.–Austin 2013, no pet.) ("[T]o be competent summary-judgment evidence, an affidavit must contain specific factual bases, admissible in evidence, upon which its conclusions are based."). Neither are his self-serving statements regarding his state of mind or subjective beliefs competent summary judgment evidence. *See Cornyn*, 966 S.W.2d at 651 (affidavits whose content is implied by very assertion of TCHRA or ADA claim are not competent summary judgment evidence, and "[s]elf-serving statements regarding a witness's state of mind or her subjective beliefs are

no more than conclusions" and are not competent summary judgment evidence).

Donaldson also included in his affidavit a statement that DADS temporarily assigned a psychology assistant to help him with typing and clerical duties. He averred that she was promoted to another position after a week and DADS never assigned anyone else to assist him. However, this, again, is no evidence that Donaldson could perform the essential functions of his job—with or without the accommodation of an assistant to help with typing and filing—which included interacting with clients, conducting functional behavioral assessments and ensuring the development of behavior support plans, conducting or ensuring training for staff in applied behavior analysis, and monitoring and evaluating clients' behavior support plans to ensure their effective implementation. And none of his evidence addressed the delinquencies and deficiencies in his performance that were noted prior to his disability (his cancer diagnosis).

Donaldson presented no evidence that he was able to perform the essential functions of an Associate Psychologist III at the Brenham State Supported Living Center ("BSSLC"), either with or without accommodation. *See Hagood*, 408 S.W.3d at 523 (providing that plaintiff bears burden of establishing prima facie case on all elements of disability discrimination claim, including element that plaintiff could perform all essential job functions with or without modifications or accommodations or that some reasonable accommodation by employer would enable him to perform job); *Davis*, 188 S.W.3d at 757 (stating same).

Although DADS acknowledged that Donaldson was qualified by his credentials at the time it initially hired him in December 2008, DADS presented extensive summary judgment evidence that it terminated Donaldson because he was not adequately performing the essential functions of an Associate Psychologist III at the BSSLC. The majority accurately outlines this evidence in its opinion. Op. at 428-31, 437-39. Evidence of Donaldson's inability to perform the essential functions of his position date back to November 2009—prior to his cancer diagnosis—when DADS instituted performance counseling for Donaldson because he fell asleep during a meeting and because he had failed to timely submit necessary reports. As the majority recites, Donaldson received numerous warnings, reminders, and performance counseling from his supervisors between November 2009 and April 2010, when he first informed DADS of his cancer diagnosis, for delinquent and inadequate reports. Following his diagnosis, Donaldson missed trainings for treatment, which DADS allowed him to make up at a later date. However, DADS presented evidence that Donaldson likewise failed to participate in the rescheduled trainings. Throughout 2010 until April 2011, when DADS terminated his employment, Donaldson continued to receive negative performance evaluations. DADS presented evidence that he failed to adhere to proper protocols, that his delinquent and incorrect reports resulted in his clients' not receiving necessary care, that he failed to adequately train staff for implementing a client's behavioral support plan, and that he failed to enter the required behavioral data or analysis for the residents in his unit.

I conclude that Donaldson failed to establish a *prima facie* disability discrimination case because he presented no evidence that he was qualified to perform the essential elements of his job as an Associate Psychologist III at the BSSLC, either with or without reasonable accommodation for his disability. Donaldson did not assert a

separate cause of action seeking to remedy a failure to reasonably accommodate his disability in the trial court, and he does not raise any argument on appeal that the trial court erroneously granted summary judgment on such a claim. Accordingly, I would not address "reasonable accommodation" as a separate claim at all. I would treat this issue, as the parties do, in the context of Donaldson's failure to meet his burden of proof on his disability discrimination claim under the TCHRA.

## Conclusion

Because the majority does not apply the correct standard of proof of a disability discrimination claim under the TCHRA, contradicts itself by assuming both that Donaldson was qualified for his job with reasonable accommodation and that he was unqualified as a matter of law, and improperly creates a separate "reasonable accommodation claim" and remands it for trial, I concur in the majority's judgment only insofar as it affirms the summary judgment in favor of DADS on Donaldson's disability discrimination claim and his other claims. I dissent insofar as the majority concludes that Donaldson raised a material fact issue with respect to a putative "reasonable accommodation claim" and remands this case for trial.

I would affirm the trial court's summary judgment on all of Donaldson's claims.