**AFFIRMED and Opinion Filed December 10, 2020**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-19-01454-CV
_____

**AMANDA LYNN POSEY-GLYNN, Appellant**
**V.**
**CAMDEN DEVELOPMENT, INC., Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-05542-2018**

## MEMORANDUM OPINION
Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Reichek

Amanda Lynn Posey-Glynn appeals the trial court's no-evidence summary judgment dismissing her claims for workplace discrimination and retaliation. Bringing four issues, Posey-Glynn generally contends the trial court erred in granting Camden Development, Inc.'s motion because she presented sufficient evidence to establish a prima facie case for each of her causes of action. Because we conclude Posey-Glynn failed to meet her summary judgment burden, we affirm the trial court's judgment.

## Background

Posey-Glynn began working for Camden at the Camden Panther Creek apartment complex in Frisco, Texas, on November 9, 2016. Posey-Glynn was employed as a Make Ready Technician and her responsibilities included various maintenance tasks and preparing vacant apartments for new tenants.

On April 14, 2017, Posey-Glynn was injured as she and a co-worker were moving a washing machine up a flight of stairs. According to Posey-Glynn, the washing machine slipped off a dolly and she caught it, hurting her left side. She did not fall, however, and they completed moving the washer. Posey-Glynn then continued working her shift, but left work one hour early. Posey-Glynn informed Camden that she had been injured the next day.

When Posey-Glynn informed her supervisor about the accident, she was instructed to see a doctor. A physician at CareNow diagnosed her with cervical neck strain and spasms of the back and neck. An X-ray of Posey-Glynn's spine was considered normal for her age. She was given medication and released to return to work the same day with restrictions on kneeling, squatting, and lifting expected to last one week.

Camden's work-related injury policy states the following:

Camden has a Return to Work program that facilitates the earliest possible return of workers injured on the job to the workplace for the purpose of performing meaningful, productive work within realms of their physical capabilities. The Return to Work Policy offers a transitional return to work and is intended to be time-limited and

temporary. The maximum time allowed for transitional duty is six months.

Under the policy, an injured employee may participate in the Return to Work program if the employee was not "taken off work" by her treating physician and Camden could accommodate the employee's work restrictions. Camille Churchill, Camden's workers' compensation manager, confirmed with the community manager that Posey-Glynn's medical restrictions could be accommodated when she returned.

Posey-Glynn visited CareNow several times over the course of the following week complaining of continued pain and an allergic reaction to the medication she was given. Although she was released to light duty work, Posey-Glynn was placed on medical leave by Camden beginning on April 20.

Posey-Glynn returned to work on May 12 with restrictions on bending, stooping, kneeling, squatting, and overhead reaching. She was further limited to lifting no more than ten pounds and working no more than four hours a day. These restrictions were expected to last through May 25.

On May 16, Sue Evans, a nurse assigned to manage Posey-Glynn's claim by Camden's workers' compensation insurance carrier, sent an email to Churchill stating that MRI reports for Posey-Glynn showed no significant spinal cord problems and "her diagnosis remains cervical and lumbar strain." Evans further stated that Posey-Glynn was being referred to a therapy facility in Frisco and she would be choosing a new treating provider from a list Evans had sent her.

Shortly after receiving this email, Churchill sent an email to others working at the insurance company stating she had concerns with the manner in which Evans was handing Posey-Glynn's claim. Churchill referenced earlier discussions about Camden's displeasure with how Evans had handled another claim and she requested that a new nurse be assigned to Posey-Glynn. Later emails indicate Linda Sanchez was assigned as Posey-Glynn's new claim manager.

On June 12, Posey-Glynn was reassessed at CareNow and was again released to light duty work. Her restriction on lifting was modified to up to twenty pounds. She was additionally restricted from doing any pushing, pulling or overhead reaching, and her maximum work hours per day were reduced to two. An MRI was ordered to be done of Posey-Glynn's left shoulder.

The next day, Churchill emailed Sanchez stating she had contacted Posey-Glynn's manager, Randi Teube, to see if the new restrictions, including working only two hours per day, could be accommodated. Churchill stated she was concerned that Posey-Glynn was not improving and there was a possibility she would need to be taken off work again. Teube responded to Churchill stating, "I don't see how this can work for us. We are heading into our busy season and we just received a 2 week notice from our maintenance tech, so we are already short staffed." Churchill replied, "Hopefully we will know more once she has the MRI performed." Three days later, Churchill confirmed with Camden's district manager

that Posey-Glynn was working only two hours per day and her restrictions were being accommodated.

On June 20, the MRI of Posey-Glynn's left shoulder was performed. The scan showed no tears and only mild tendinosis and bursitis. Posey-Glynn's work restrictions were again modified to prohibit any reaching, overhead reaching, or lifting with her left arm. The restrictions were expected to last one week.

On June 22, Sanchez emailed Churchill stating that she had received a call from Posey-Glynn complaining that her restrictions were not being accommodated. Posey-Glynn told Sanchez that her supervisor told her to wash windows, which required her to reach over her head. She stated her shoulder pain worsened overnight and she was unable to go to work the next day. Sanchez asked Churchill to let her know if Posey-Glynn's restrictions could not be accommodated going forward.

On July 5, Posey-Glynn was again evaluated at CareNow. The medical notes state that Posey-Glynn was upset that her job was "not honoring restrictions." In addition to her normal medications, Posey-Glynn was given a shoulder sling for her left arm.[1] The restrictions on reaching, overhead reaching, and lifting with her left arm were continued and her maximum hours per day of work were limited to four until July 26.

---

[1] Although wearing the sling was not made a work restriction until July 26, Posey-Glynn's medical records indicate she was given a sling for her left shoulder at her July 5 examination.

On July 6, Teube emailed Churchill saying that she and a co-worker had spoken with Posey-Glynn and informed her that, since her arm was now in a sling, they could no longer accommodate her restrictions. Teube further stated in the email that they understood Posey-Glynn was scheduled to be re-evaluated on 7/26/17 and "it is our hope that she will be released 100% so she is able to come back to work."

Camden's benefits administrator, Becky Martinez, sent Posey-Glynn a letter stating that, due to the physical demands of the Make Ready Technician position, Camden could no longer accommodate the doctor's restrictions on her ability to work. Martinez told Posey-Glynn she was eligible for a Non-Family Medical Leave Act leave of absence beginning on July 7. Martinez further stated that her leave of absence did not guarantee Posey-Glynn's job would be restored at the end of the leave period and her job could be eliminated or filled by another person during that time. In the event her job was eliminated or filled, Posey-Glynn could apply for a comparable position within the company. The maximum amount of leave time for which Posey-Glynn was eligible was four weeks based on her tenure with Camden. The leave period could be extended by her manager, however, until a doctor released Posey-Glynn to return to work.

On July 20, Teube emailed Churchill to discuss posting Posey-Glynn's position as available if she was not released back to work without restrictions following a scheduled doctor's visit on July 26. Churchill responded that, although the company could not accommodate the work restrictions Posey-Glynn was given

–6–

at her last appointment, "this does not mean that we will not accommodate any restrictions" and it was not necessary that Posey-Glynn be released to full-duty work.

Following her July 26 appointment, Posey-Glynn's work restrictions were increased rather than decreased. The restrictions now included no pushing, pulling, grasping, or squeezing with her left arm in addition to no reaching, overhead reaching, or lifting. In addition, Posey-Glynn was instructed to wear a "splint/cast" and her work hours continued to be limited to four per day.

In response to the increased restrictions, Rosa Cameron, Camden's director of benefits, emailed several employees including Churchill, Teube, and Martinez regarding Posey-Glynn's position. Cameron stated that "[s]ince we are unable to accommodate her restrictions, Amanda will remain on leave status." Cameron further stated that Posey-Glynn would exhaust her leave time on August 4, but because her next doctor's appointment was scheduled for August 10, the company was extending her leave until then with the "hope that her restrictions change enough for her to return to work." Cameron concluded by stating she understood they were extremely busy and short staffed at the community and, because Posey-Glynn was not eligible for a Family Medical Leave Act leave of absence, they could begin looking for someone to replace her.

On August 9, Churchill emailed Teube confirming Posey-Glynn's appointment to be re-evaluated by her doctor on the 10th. Churchill stated that "if she is released with restrictions you are able to accommodate, then she will return to

work. If she is released with restrictions you are not able to accommodate, then her status will change from LOA to Terminated."

Posey-Glynn's medical records show that, following her August 10 evaluation, Posey-Glynn's doctor continued restrictions on her use of her left arm including reaching, overhead reaching, and any lifting or carrying. Posey-Glynn was further restricted to working only six hours per day.

Churchill called Posey-Glynn the next day and, according to Posey-Glynn, told her she was being terminated "because [she] did not get well quickly enough." A follow-up letter stated that based on her current medical restrictions, she was "unable to perform the physical demands of [her] position as a Make Ready Technician." The letter further stated that Camden could not accommodate her restrictions "due to the business needs of the community." The letter informed Posey-Glynn that because she had exhausted her leave, she would be terminated unless she (1) qualified under the Americans with Disabilities Act and applicable state laws and (2) notified Camden of her desire to return to work with reasonable accommodations that would not impose an undue hardship on Camden's business operations. The record contains no response to this letter from Posey-Glynn.

Posey-Glynn filed this lawsuit against Camden in April 2018, asserting claims under chapter 21 and section 451.001 of the Texas Labor Code. In her petition, Posey-Glynn asserted she was disabled and Camden discriminated against her "in the terms, conditions, and privileges of her employment," and by retaliating against

her and terminating her employment. Posey-Glynn further asserted she was discharged because she filed a workers' compensation claim in good faith.

Camden filed a combined traditional and no-evidence motion for summary judgment contending Posey-Glynn was terminated solely because she exhausted all her paid and unpaid leave of absence time and, at the time of her termination, she had work restrictions that Camden could not accommodate. Camden argued Posey-Glynn had no evidence to show she was disabled, that she was qualified for her position as a Make Ready Technician, or that she was retaliated against for engaging in a protected activity.

Posey-Glynn responded that she met the burden of showing she has a disability because she had a shoulder strain and cervical strain. She further contended she had "a record of a disability and she may also be perceived as being disabled." She stated her job qualifications were demonstrated by the fact that she had worked in the position of Make Ready Technician before her injury. With respect to her retaliation claim, Posey-Glynn argued Camden's proffered reason for her termination was false and evidence of a retaliatory motive was shown by Camden's knowledge of her workers' compensation claim, the company's negative attitude towards her injured condition, and its failure to adhere to established company policies. She further asserted that Camden failed to accommodate her disability after she complained about being forced to work outside her medical limitations.

Posey-Glynn attached over 130 pages of exhibits to her response, including her declaration, her medical records, emails and letters from Camden employees, and Camden's Return to Work policy. Nowhere in her response, however, does Posey-Glynn refer to any of the evidence she attached or explain how the exhibits support her claims or create an issue of fact. In its reply, Camden noted that Posey-Glynn failed to support any of her arguments with references to evidence. Camden further noted that, although Posey-Glynn argued that Camden refused to accommodate her alleged disability, she had not asserted a claim for failure to accommodate in her petition.

On October 24, 2019, the trial court granted Camden's motion for summary judgment. In its order, the court stated that "[a]fter reviewing the Motion, the response – which did not identify, cite to, or explain any of the unlabeled documents attached thereto – and reply, as well as the pleadings on file with the Court, it is the Court's opinion that the No-Evidence Motion should be GRANTED." The court dismissed Posey-Glynn's claims in their entirety and assessed all costs of the action against her. Posey-Glynn then brought this appeal.

**Analysis**

In four issues, Posey-Glynn contends the trial court erred in granting the no-evidence summary judgment because she established a prima facie case for each of her claims. To defeat a no-evidence motion for summary judgment, the non-movant must produce evidence raising a genuine issue of material fact on each element of

the claim or defense challenged by the movant. *S.W. Elec. Power Co. v. Grant*, 73 SW.3d 211, 215 (Tex. 2002). In determining whether the non-movant has successfully carried their burden, neither the trial court nor the appellate court is required to wade through a voluminous record in search of evidence to support the respondent's argument that a fact issue exists. *Bich Ngoc Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied). The respondent must specifically identify the supporting proof on file that it seeks to have the trial court consider. *Id*. A trial court does not abuse its discretion by not considering evidence to which the respondent does not specifically direct the court's attention or for which the respondent fails to provide guidance on how the evidence supports her claim. *See id*. at 777 & n.4.

Posey-Glynn's response to Camden's motion for summary judgment failed to identify or analyze any of the evidence she was relying upon to support the challenged elements of her claims. On appeal, Posey-Glynn argues discussion of her evidence was unnecessary because the 130 pages of exhibits were "laid out simply and chronologically" and her medical records were "self-explanatory." Although Posey-Glynn may view her case as being self-evident, the trial court was not required to determine on its own exactly how Posey-Glynn viewed her evidence as supporting her claims or which exhibits she believed created a fact issue on the elements challenged by Camden. *See Levine v. Unique Beverage Co.*, No. 05-11-01467-CV, 2013 WL 1281896, at *3 (Tex. App.—Dallas Mar. 19, 2013, pet. denied)

–11–

(mem. op.) (trial court not required to search through 98 pages of exhibits when non-movant has burden of pointing out what evidence supports responsive issues); *In re A.J.L.*, No. 14-16-00834-CV, 2017 WL 4844479, at *4–5 (Tex. App.—Houston [14th Dist.] Oct. 26, 2017, no pet.) (mem. op.) (trial court not required to search through 114 pages of exhibits attached to response for evidence raising fact issue without guidance from non-movant).

Even on appeal, Posey-Glynn does not point to any evidence that, at the time her employment was terminated, she was qualified for the position of Make Ready Technician – one of the elements Camden challenged. To establish a prima facie case of disability discrimination under chapter 21 of the labor code, a plaintiff must show that (1) she has a disability, (2) she is qualified for the job, and (3) she suffered an adverse employment decision because of her disability. *Donaldson v. Tex. Dept. of Aging & Disability Servs.*, 495 S.W.3d 421, 436 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). To raise a fact issue on her qualifications, Posey-Glynn was required to present evidence showing either (1) she could perform all the essential job functions of a Make Ready Technician with or without modifications or accommodations or (2) that some reasonable accommodation by Camden would enable her to perform those job functions. *Id.* at 437.

In response to Camden's motion for summary judgment, Posey-Glynn argued simply that she was "clearly qualified for her job, she had worked for Camden for many months before her injury." But Posey-Glynn failed to provide evidence and

–12–

did not address, either in the trial court or on appeal, her ability to perform the essential functions of a Make Ready Technician after her injury and at the time she was terminated. Nor has she addressed or provided evidence to show what reasonable modifications or accommodations Camden could have provided that would have allowed her to perform all the essential functions of the job. Although Camden allowed Posey-Glynn to work within her medical restrictions during the transitional duty period provided for in the company's Return to Work Policy, this transitional period was, by definition, temporary and not intended as a permanent accommodation of Posey-Glynn's restrictions. Posey-Glynn provided no evidence that she performed all the essential functions of her job during the transitional period. Indeed, the evidence she provided indicated that she did not, and could not, perform all aspects of her job during that time.

Posey-Glynn asserts that she pleaded a failure to accommodate claim because she "pled a case of disability discrimination, thereby necessarily including accommodation by definition." Although the elements of a disability discrimination claim and a failure-to-accommodate claim overlap to some extent, the latter is not subsumed within the former. *See id.* at 439. Even assuming Posey-Glynn's petition could be read to assert a failure-to-accommodate claim, she was still required to provide summary judgment evidence sufficient to create a fact issue on whether she was qualified to do the job at the time she was terminated. *See id.* The elements of an accommodation claim are (1) the plaintiff has disability, (2) the employer had

–13–

notice of the disability, (3) the plaintiff was qualified for the position with reasonable accommodations, and (4) the employer refused to make such accommodations. *Id.* It was Posey-Glynn's burden to show that an accommodation of her alleged disability existed and that such an accommodation was reasonable. *Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 525 (Tex. App.—El Paso 2013, no pet.). Again, Posey-Glynn failed to present any evidence of what reasonable accommodations Camden could have provided that would have allowed her to perform all the essential functions of a Make Ready Technician at the time her employment was terminated. The termination letter sent to Posey-Glynn specifically informed her that if she wished to return to work with a reasonable accommodation that would not impose an undue hardship on Camden's business operations, she needed to notify Camden. Posey-Glynn provided no evidence that she ever responded to the letter. According to Posey-Glynn's own declaration, the only accommodation she requested from Camden was that she not be required to perform any job tasks that conflicted with her medical restrictions. We conclude the trial court properly granted Camden's motion for no evidence summary judgment on Posey-Glynn's disability discrimination claims.

Posey-Glynn's claims of retaliation similarly fail for lack of evidence. Although unclear from her petition, Posey-Glynn contended in her response to Camden's motion for summary judgment that she had asserted a claim for retaliation under chapter 21 of the labor code. Posey-Glynn stated this claim was based on

–14–

Camden's action of placing her on a leave of absence after she complained to her workers' compensation claim supervisor that Camden was requiring her to perform job duties that did not fall within her medical restrictions. Actionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to a discriminatory practice made unlawful under chapter 21. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Posey-Glynn cites no authority, and provides no argument, that the conduct about which she complained to her claim supervisor was a discriminatory practice under chapter 21 or that her complaint would have put Camden on notice of any unlawful discrimination. *See Alamo Heights Ind. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786 (Tex. 2018) (employee's complaint must, at minimum, alert employer that unlawful discrimination is at issue). Nor does she cite any authority or provide any argument for the proposition that being placed on a leave of absence because she could not fully perform the job duties of a Make Ready Technician constituted an adverse employment decision. Although Camden's Return to Work program allowed employees to temporarily work within their medical restrictions following a job-related injury when their restrictions could be accommodated, Camden was not required to provide such work, particularly if business demands made transitional work impractical. *See Donaldson*, 495 S.W.3d at 443 (failure to allow employee to work within medical restrictions when employee could not perform essential duties of job was not adverse

–15–

employment decision). As discussed above, it was Posey-Glynn's burden to produce evidence that she could fully perform the duties of a Make Ready Technician, with or without reasonable accommodations, and she failed to do so.

Posey-Glynn also failed to present evidence to support her claim for retaliatory discharge under section 451.001 of the labor code. Section 451.001 states that a person may not discharge or in any other manner discriminate against an employee because the employee has filed a workers' compensation claim in good faith. TEX. LAB. CODE ANN. § 451.001. To support her claim that her discharge was retaliatory, Posey-Glynn had the burden of demonstrating a causal link between the termination of her employment and her filing of the claim. *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.). Circumstantial evidence sufficient to establish a causal connection includes: (1) knowledge of the compensation claim by the person terminating the employee; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the reason for the discharge was false. *Vallance v. Irving C.A.R.E.S., Inc.*, 14 S.W.3d 833, 837 (Tex. App.—Dallas 2000, no pet.); *Love v. Geo Group, Inc.*, No. 04-12-00231-CV, 2013 WL 1223870, at *3 (Tex. App.—San Antonio Mar. 27, 2013, no pet.) (mem. op.).

In this case, it is undisputed that Churchill, whom Posey-Glynn characterizes as the decision-maker, had knowledge of Posey-Glynn's worker's compensation

claim. This fact standing alone, however, is insufficient to raise a fact issue on retaliation. *Vallance*, 14 S.W.3d at 837. Knowledge of the claim is simply a factor to consider along with the remaining evidence. *Id*. Where a plaintiff fails to produce any probative evidence in the remaining categories, a no-evidence summary judgment is appropriate. *Love*, 2013 WL 1223870, at *3.

In support of her assertion that there was a negative attitude towards her injured condition, Posey-Glynn points to her immediate supervisor, Teube, asking her to perform tasks outside her medical restrictions. To be probative of retaliation, however, the negative attitude must be expressed by an individual with authority over the employment decision at issue. *Id*. at *4. Posey-Glynn identified Churchill as the person who terminated her employment and she did not argue or point to any evidence that Teube was involved in the decision. Accordingly, Teube's actions are not probative of any retaliatory motive in the termination decision. *See id*. (supervisors' negative attitude towards medical restrictions was not evidence of retaliatory motive where supervisors were not involved in termination decision).

As for Churchill, the evidence provided by Posey-Glynn showed that Churchill consistently attempted to ensure that Posey-Glynn's medical restrictions were accommodated to the extent possible during the transitional Return to Work period. When the business needs of the community during its "busy season" required her to work beyond her physical capabilities, Posey-Glynn was placed on a leave of absence.

Posey-Glynn states that Churchill's negative attitude was demonstrated by her request that a new workers' compensation claim manager be assigned to handle Posey-Glynn's claim. Posey-Glynn suggests Churchill made this request because the original claim manager, Evans, was helping Posey-Glynn find a new physician. Although an email exchange between Evans and Churchill shows that Evans provided Posey-Glynn with a list of possible new treating physicians, nothing in the record suggests that this was because Posey-Glynn had requested a new doctor or that Evans's assistance in finding Posey-Glynn a new medical provider was the basis of Churchill's request for a new claim manager. Posey-Glynn's declaration states that she saw "varying doctors" during her course of treatment. She cites no evidence that she expressed dissatisfaction with any of them.

In an email to the insurance carrier, Churchill stated she had concerns with the way Evans was handling Posey-Glynn's claim, but she gave no indication of the nature of those concerns. In the same email, Churchill referenced that she had concerns with how Evans managed another claim, indicating her issues were with Evans, not Posey-Glynn. Accordingly, Posey-Glynn's evidence fails to demonstrate Churchill had a negative attitude towards Posey-Glynn's injury or her compensation claim.[2]

---

[2] Posey-Glynn additionally references an email from Teube to Churchill sent two weeks after Posey-Glynn's employment was terminated stating that Posey-Glynn had "verbally committed to move out of her apartment on 8/31/2017." Posey-Glynn suggests this email shows Churchill's negative attitude because she was "forcing Posey-Glynn to move out of her apartment." We disagree. This email does not state that

Posey-Glynn next contends that Camden failed to follow its own Return to Work Policy because she was not allowed the full six months of transitional work provided by the program. The policy states that the "maximum time allowed for transitional duty is six months." The policy does not, however, provide a minimum amount of time that must be provided for transitional work. Nor does the policy require that an injured employee be provided any transitional work if the employee's work restrictions cannot be accommodated. Because the policy does not mandate that injured employees be given six months of transitional work, Posey-Glynn did not provide any evidence that Camden failed to follow its own policies.

Finally, Posey-Glynn provided no evidence regarding how Camden treated its other employees, let alone employees who were similarly situated to her. Nor did she provide any evidence to show that the reason given for her termination – that she was unable to meet the physical demands of her position – was false. An employer is permitted to terminate an employee who sustains a job-related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of the position. *See Garcia v. Allen*, 28 S.W.3d 587, 601 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied). Posey-Glynn

---

Posey-Glynn was being "forced" to move out of her apartment by Churchill or anyone else. To the extent it could be read that way, the email also does not suggest that Posey-Glynn's moving out was anything other than a consequence of her no longer working as a maintenance technician for the apartment complex. Reading this evidence in the light most favorable to Posey-Glynn, the email, standing alone, is not sufficient to create a fact issue on her claim for retaliatory discharge.

provided no evidence she could perform the essential functions of her position at the time her employment was terminated.

Based on the foregoing, we conclude the trial court properly granted Camden's motion for no-evidence summary judgment on Posey-Glynn's retaliation claims.

We affirm the trial court's judgment.

/Amanda L.Reichek/
AMANDA L. REICHEK
JUSTICE

191454F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AMANDA LYNN POSEY-GLYNN,
Appellant

No. 05-19-01454-CV        V.

CAMDEN DEVELOPMENT, INC.,
Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-05542-
2018.
Opinion delivered by Justice
Reichek. Justices Whitehill and
Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CAMDEN DEVELOPMENT, INC. recover its costs of this appeal from appellant AMANDA LYNN POSEY-GLYNN.

Judgment entered December 10, 2020.